**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

NOV 1 6 2018

JAMES W. McCORMACK, CLERK
By:_____
                              DEP CLERK



**IN THE UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**BRANDON LEE WHEELER**                                                **PLAINTIFF**

**VS.**                         **NO.** 4:18-cv-859-SWW

**CITY OF SEARCY, ARKANSAS;
ERIC WEBB, individually and in his official
capacity as CHIEF OF POLICE for the City
of Searcy; MARK KIDDER, individually and
in his former official capacity as a Police Officer
and Investigator with and for the City of Searcy;
ADAM SEXTON, individually and in his official
capacity as a Police Officer and Investigator
with and for the City of Searcy; NICK DARNELL,
individually and in his official capacity as a
Police Officer and Investigator with and for the
City of Searcy; CHARLEY PERRY, individually
and in his former official capacity as a Police
Officer and Investigator with and for the City of
Searcy; and JOHN DOES 1-20, past and present
employees of the City of Searcy or the Searcy Police
Department.**                                                **DEFENDANTS**

This case assigned to District Judge _Wright_
and to Magistrate Judge _Harris_

### COMPLAINT AND REQUEST FOR JURY TRIAL

**COMES NOW**, the Plaintiff, Brandon Lee Wheeler, by and through his attorneys D. Paul

Petty and J. Michael Petty, and for his Complaint against the City of Searcy; Searcy, Arkansas Police

Department; Eric Webb, individually and in his official capacity as Chief of Police with and for the

City of Searcy; Mark Kidder, individually and in his former official capacity as a Police Officer and

Investigator with and for the City of Searcy; Adam Sexton, individually and in his official capacity

as a Police Officer and Investigator with and for the City of Searcy; Nick Darnell, individually and

in his official capacity as a Police Officer and Investigator with and for the City of Searcy; Charley

Perry, individually and in his former official capacity as a Police Officer and Investigator with and

for the City of Searcy; and John Does 1-20, past and present employees of the City of Searcy or the Searcy Police Department, states as follows:

## PARTIES

1. Plaintiff Brandon Lee Wheeler is an adult citizen and currently resides in White County, Arkansas.

2. Defendant City of Searcy, Arkansas is a municipal corporation formed under the laws of the State of Arkansas and may be served with service of process through the City Attorney, Buck Gibson, 100 North Spring Street, Searcy, Arkansas 72143.

3. Defendant Eric Webb (hereinafter referred to as "Chief Webb") is, and was, at all times relevant hereto, employed by the City of Searcy, Arkansas, as a Police Officer with and for the Searcy Police Department, is currently the Chief of Police for the Searcy Police Department, and he was acting under color of State law.

4. Defendant Mark Kidder (hereinafter referred to as "Kidder") is not, upon information and belief, currently, but was at all times relevant hereto, employed by the City of Searcy, Arkansas, as a Police Officer and Investigator with and for the Searcy Police Department, and he was acting under color of State law.

5. Defendant Nick Darnell (hereinafter referred to as "Darnell") is, and was at all times relevant hereto, employed by the City of Searcy, Arkansas, as a Police Officer and Investigator with and for the Searcy Police Department, and he was acting under color of State law.

6. Defendant Adam Sexton (hereinafter referred to as "Sexton") is, and was, at all times relevant hereto, employed by the City of Searcy, Arkansas, as a Police Officer and Investigator with and for the Searcy Police Department, and he was acting under color of State law.

7. Defendant Charley Perry (hereinafter referred to as "Perry") is not, upon information and belief, currently, but was at all times relevant hereto, employed by the City of Searcy, Arkansas, as a Police Officer and Investigator with the Searcy Police Department, and he was acting under color of State law.

8. Defendants John Does 1-20 represent individual persons and/or entities, potentially including, but not necessarily limited to, past and/or present employees of the City of Searcy, Arkansas, and the Searcy Police Department, whose identities remain unknown to Plaintiff at this time, but whose names and identities may be revealed pending full discovery and further investigation in this matter.

## JURISDICTION AND VENUE

9. This is a Civil Rights cause of action brought by the Plaintiff, Brandon Lee Wheeler, a victim, who was unlawfully interrogated, unlawfully arrested, falsely imprisoned, and improperly and unconstitutionally charged with Capital Murder and Abuse of a Corpse, related to a twenty-three (23) year old missing person's case, based upon either lies or extreme negligence by the Searcy Police Investigators who swore out affidavits for multiple search warrants and an arrest warrant that resulted in the Plaintiff being unlawfully interrogated, arrested, and incarcerated, without bond, for roughly one (1) month in Ohio and Arkansas, whom subsequently retained legal counsel, ultimately bonded out of White County Detention Center on a one-hundred thousand dollar ($100,000) bond, was restrained and forbidden to leave the State of Arkansas while on bond which resulted in lost wages as Plaintiff works outside the State of Arkansas as a pipeline inspector, endured a highly stressful criminal prosecution for six (6) months prior to the State of Arkansas filing a nolle prosequi, and was subjected to and has continued to endure allegations by the Searcy Police Department to the press

that investigations are still ongoing and that Plaintiff is their main suspect.  This cause of action arises out of Defendants' deprivation of Plaintiff's federal and state constitutional and statutory rights, including the Fourth Amendment protections from unreasonable, warrantless searches and seizures and requirement that warrants only issue on probable cause, Fifth Amendment right of due process, Sixth Amendment right to a speedy trial, Eighth Amendment rights against cruel and unusual punishment and against excessive bail, all held to the State through the Fourteenth Amendment.  This case also raises issues of State law, specifically deprivations of civil rights under Article II of the Arkansas Constitution and the Arkansas Civil Rights Act, codified at Arkansas Code Annotated § 16-123-101, et seq.; negligent hiring, supervision, or retention; and general negligence. Plaintiff seeks recovery under federal statute and Arkansas common law because, among other things, Defendants deprived him of guaranteed rights while acting under color of law.

10.  That this Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343  over Plaintiff's cause of action arising under the Constitution of the United States, 42 U.S.C. §§1983 and 1988, and the Declaratory Judgment Act (28 U.S.C. §§2201 and 2202).  Jurisdiction is proper in this Court under the Fourth, Fifth, Sixth, and Eighth Amendments of the United States Constitution, made applicable to the States through the Fourteenth Amendment.  This Court has supplemental jurisdiction over the Plaintiff's causes of action arising under Arkansas State law pursuant to 28 U.S.C. § 1367.

11.  Venue lies in the United States District Court for the Eastern District of Arkansas under 28 U.S.C. § 1367.

## BACKGROUND/FACTS COMMON TO ALL COUNTS

12.  Plaintiff expresses his sincere and continuing sympathy for the family of Mr. Jarrod

Green (hereinafter referred to as "Jarrod"), Plaintiff believes that Jarrod's family, friends, and the general public have been grossly and negligently misled by the Defendants in this case, that the publicity from the Plaintiff's criminal case was not only prejudicial to Plaintiff, but was certainly difficult for Jarrod's family and friends that had to endure exposure to Jarrod's past and his disappearance after twenty-three (23) years, Plaintiff further acknowledges that this civil action may further cause Jarrod's family to endure more grief and their potential exposure to certain facts that may not be known, Plaintiff sincerely apologizes for that consequence and Plaintiff further believes that the investigation into Jarrod's disappearance was not only botched by the Searcy Police Department from the outset, but further believes that either the gross and negligent actions of investigators in conjunction with their intentional dissemination of misinformation and half-truths to the public, the prosecutors, and the court clearly illustrates the highly prejudicial nature of the investigation that has occurred for decades, and Plaintiff prays that this civil action will expose Jarrod's family and the general public to the true and accurate facts known by authorities throughout this deeply flawed investigation which has followed.

13. On or about, September 30, 1994, Jarrod Devlin Green, twenty (20) years of age at the time of his disappearance, left his parents' home and is assumed not only to be deceased, but also murdered by the Plaintiff in this case.

14. The Searcy Police have conducted countless investigations into Jarrod's whereabouts since Jarrod's father, David Green, reported him missing on October 5, 1994.

15. Subsequently, on October 10, 1994, Jarrod Green's girlfriend, Shannon Weaver, also referred to as Witness 3 in Sexton's affidavit, reports that an unknown male called her on October 9, 1994, and said that Jarrod was o.k..

16.  Also on October 10, 1994, David Green asks authorities for the investigation to stop.

17.  After two (2) decades of investigations by several Investigators with the Searcy Police Department, which have included a multitude of interviews, with family, friends, defendants, persons of interest, some of which were subjected to polygraph and/or voice stress analysis examinations, psychics, law enforcement agencies from several states, and property searches in multiple Arkansas' counties, no charges had ever been filed.

18.  On Wednesday, November 2, 2016, Searcy Police Detectives Sexton, Kidder, and Darnell re-opened Jarrod Green's cold-case for further investigation.

19.  That the affidavit for the arrest of Plaintiff, sworn out by Sexton on March 28, 2017, [Attached as Exhibit A] states, "On December 19, 2016 a search warrant was signed by a judge for property of interest in connection with this case in rural White County Arkansas. From December 20, 2016 through December 23, 2016 the aforementioned uninhabited property was searched due to evidence found confirming information obtained from various sources in this investigation. This information indicated Jarrod Green's body was disposed of at this location. Certified Cadaver dogs were used successfully in locating the aforementioned evidence."

20.  The property of interest continued to be searched by Investigators, with the consent of the Trustee of the property, throughout the spring and summer of 2017.

21.  These searches are known to have consisted of Investigators, certified cadaver dogs, heavy machinery, a boat or boats, and a water pump used to drain a pond or ponds.

22.  Some of these searches, among current information and belief, were also conducted on an adjacent party, with or without the property owner's consent.

23.  Many friends of Jarrod Green have been interviewed since Jarrod went missing.

21. Jarrod Green's girlfriend at the time and his family admit they spoke with Jarrod about faking his own death and further admit that he was smart enough to pull it off.

22. Coincidently, several people have come forward with statements of seeing Jarrod alive.

23. One of Jarrod's former teachers allegedly saw Jarrod after he was reported missing.

24. A driver in Oklahoma alleged that they picked Jarrod up hitch-hiking and contacted Jarrod's parents to tell them.

25. In fact, on August 8, 1996, a female identifying herself as Tracey Pellers, called a Missing Children Hotline and reported that Jarrod Green is her fiancee and that she is pregnant, that they live in Spartanburg, South Carolina, that he works as a mechanic, that she has tried to get him to contact his parents, and she provided an address where they both live. [Attached as Exhibit B]

26. Investigators notes show that little help was received by the Spartanburg Police Department, although Spartanburg Police did contact investigators and stated that the address provided by the caller was not a real address, which appears to have been the extent of the investigation into that lead by the Searcy Police Investigators at the time.

27. If Jarrod Green is deceased, his body has never been found.

28. If Jarrod Green was murdered, a murder weapon has never been discovered.

29. The State has questioned dozens of "witnesses" in this case.

30. Several of these "witnesses" are known methamphetamine users, dealers, and/or convicted felons in relation to this case.

31. On July 17, 1995, the State was provided information by one witness, Charles Langley, Witness 1 in Sexton's affidavit, who claimed to have been offered one-thousand dollars ($1,000.00) by the Plaintiff and another man to kill Jarrod Green.

32. In July of 1995, when Witness 1 in Sexton's affidavit provided his statement to Investigators, not only was he a convicted felon, but he was awaiting trial for at least three (3) more felonies and a felony probation revocation.

33. Witness 1 was again interviewed on March 9, 2000 by Investigator Perry.

34. In witness 1's interview on March 9, 2000, Witness 1 recanted his prior statement and stated he did not know Plaintiff at that time.

34. Witness 1 was again interviewed on December 5, 2016 by Kidder, Darnell, and Sexton.

35. On December 5, 2016, Witness 1 again claimed he made up the story in his July 1995 statement in an attempt to avoid prison.

36. Witness 1 claimed that implicating Plaintiff in Jarrod Green's disappearance was one of the things he regrets most in his life.

37. On March 28, 2017, Witness 1 was subjected to a polygraph exam in regards to whether he has any relevant knowledge of what happened to Jarrod Green.

38. At the end of the exam, Witness 1 was determined by SSA Clark to be telling the truth, although "slight deception" was cited on the question "Are you withholding information from law enforcement".

39. Witness 1's interviews in 2000, 2016, and 2017, which were subsequently supported by a polygraph exam, were ignored by Searcy Police Investigators and withheld from the Honorable Robert Edwards in Sexton's affidavit for Plaintiff's arrest.

40. In Sexton's affidavit, Witness 2, upon information and belief to be Jason Hurst (hereinafter referred to as "Hurst"), was believed to be the last person known to have seen Jarrod Green after he left his parent's home on September 30, 1994.

41.  On September 30, 1994, around 9:00 - 9:30 p.m., after Jarrod left his parents' home, Hurst met Jarrod at the Searcy Country Club parking lot.

42.  Inconceivably, Hurst was first interviewed by Searcy Police on December 8, 2016, over twenty-two (22) years after Jarrod Green's disappearance.

43.  Hurst claims he was interviewed after Jarrod's disappearance by the Federal Bureau of Investigations, but was only asked questions and not able to provide "his" story.

44.  Searcy Police Investigators suggest that it may have been Jonesboro Police Department and not the F.B.I. that conducted the prior interview, because Hurst was residing in Jonesboro.

45.  Hurst stated that Jarrod Green had given him a gun a few weeks before September 30, 1994, to hold as collateral for a debt that Jarrod owed Hurst.

46.  Hurst stated that Jarrod told him that if something happens to him, his parents were good for the money.

47.  For Jarrod's protection, Hurst stated that he provided the gun to Jarrod, whom Hurst described as acting paranoid and scared.

48.  Jarrod had indicated to his father and to Hurst that he was going to meet Plaintiff in Little Rock, where Plaintiff lived at the time, to work out their differences.

49.  On October 5, 1994, Hurst drove from Jonesboro to Searcy, went to Jarrod's parents' house, and requested that they pay him the money Jarrod owed him.

50.  The Green's recall that Hurst actually provided them Jarrod's wallet.

51.  While Hurst met with the Greens, Hurst recalled that the Greens received a phone call that provided information that Jarrod Green's car had been discovered at the Wal-Mart Supercenter in Searcy, Arkansas.

52. Through information and belief, Mitchell Johnson made the phone call to the Greens on October 5, 1994, and told the Greens he had discovered Jarrod's vehicle at the Wal-Mart Supercenter with the sunroof open and the windows down.

53. David Green reported Jarrod missing after speaking with Mitchell Johnson regarding the discovery of Jarrod's vehicle.

54. Through information and belief, Jarrod's vehicle was picked-up at Wal-Mart and driven to the Green's home prior to any investigation being performed on the vehicle.

55. Through information and belief, Jarrod's vehicle was given a cursory inspection by investigators weeks after it was discovered and moved to the Green's home.

56. Through information and belief, Mitchell Johnson also met with Jarrod after Jarrod left his meeting with Hurst on the evening of September 30, 1994.

57. Mitchell Johnson is also the person attributed to informing Jarrod two weeks prior to September 30, 1994, that nobody was looking for Jarrod and that it was safe to return home after Jarrod first ran away.

58. Mitchell Johnson also claims to have seen Jarrod Green's car around midnight of September 30, 1994, at an apartment in Searcy, Arkansas.

59. Investigators were told by Joey Blagg that he followed a friend, Jason Estes, who drove a car to Wal-Mart parking lot to leave for someone.

60. Joey Blagg claimed to had not known it was Jarrod Green's car at the time Jason Estes left the car at Wal-Mart.

61. On November 18, 2016, Jason Estes denied any wrong doing in this case and later allegedly passed a polygraph test given by Arkansas State Police in Boone County, Arkansas.

62. Mitchell Johnson is currently incarcerated at a federal prison for possession of child-pornography and sexual assault.

63. Ironically, the State had an open criminal case against Mitchell Johnson for these offenses in 2016 that the State moved to nolle prosequi in October 2016, after federal charges were brought, just weeks prior to Jarrod Green's cold case being reopened by investigators.

64. Through information and belief, on an almost annual basis for several years after Jarrod's disappearance, Mitchell Johnson was interviewed and subjected to polygraph tests regarding Jarrod's disappearance, at the request of Searcy Police Investigators, even though little information on these interviews has ever been provided.

65. Information from one of Mitchell Johnson's interviews contained acknowledgment of the polygraph examiner, Charlie Beal, using unreasonable and excessive physical force against Mitchell during questioning.

66. The Green's acknowledge that Jarrod was using drugs at the time he disappeared.

67. Jarrod's mother, Sharon Green, stated that prior to Jarrod's disappearance, that Jarrod's car was shot and the passenger side window was blown out by a bullet.

68. Jarrod's mother stated that Jarrod never divulged names, but she was told that Sean Clay and a bunch of black boys were chasing him; however, she did not know why.

69. Jarrod's mother explained that one of Jarrod's friends, Derrick Cook, said he could get Jarrod a job in Tennessee, helped pack Jarrod, and helped Jarrod run away, just a couple weeks before Jarrod's disappearance on September 30, 1994.

70. Jarrod's mother also said that after Jarrod disappeared some blacks were bragging about killing some skinny white kids and had used acid to dispose of the body.

71. The Green's acknowledge that they could not trust Jarrod.

72. Jarrod's mother, has acknowledged that Jarrod wanted to disappear.

73. Both the Green's and his girlfriend at the time, Shannon Weaver, claim to have discussed with Jarrod a scenario where he would run away from his problems and/or fake his own death.

74. Jarrod's family and girlfriend all believe that Jarrod was most likely smart enough to successfully fake his death and move away.

75. On April 6, 2017, a Bench Warrant was issued by the White County Circuit Court for the arrest of Brandon Lee Wheeler for the charges of Capital Murder in Violation of Arkansas Code Annotated § 5-10-101 (a)(4), a Class Y Felony, and Abuse of a Corpse in violation of Arkansas Code Annotated § 5-60-101 (a)(2)(A), a Class C Felony.

76. On May 5, 2017, the Bench Warrant for Plaintiff's arrest was filed with the White County Circuit Court.

77. On or about the 10th day of May, 2017, Plaintiff was arrested and incarcerated in Jefferson County, Ohio, where he was working at the time.

78. On the 21st day of May, 2017, Plaintiff was brought to White County Detention Center, Searcy, Arkansas, to face arraignment for both charges.

79. Plaintiff was held without bond until June 6, 2017, when bond was set at One-Hundred Thousand Dollars ($100,000.00).

80. Plaintiff provided Ten-Thousand Dollars ($10,000.00) to First Arkansas Bail Bonds and his parents provided the deed to their home as collateral for the remaining Ninety-Thousand Dollars ($90,000.00).

81. Several conditions of Plaintiff's bond were ordered.

82. Plaintiff was ordered not to leave the State of Arkansas, report to his bondsman weekly, report more frequently to the Court than is typical, not possess any firearm or be with any other person in possession of a firearm, provide his parents address, and the address where he will be staying pending the outcome of the case.

83. Plaintiff, in a gesture of good-faith, also surrendered his and his wife's passport.

84. Through information and belief, the Searcy Police Investigators were sent to Ohio to interrogate Plaintiff with the belief that he would confess to the murder of Jarrod Green.

85. Sexton, when he first addressed Plaintiff and requested that he sign a Miranda Waiver, stated that the Miranda Waiver was only a formality.

86. Plaintiff requested to speak with an attorney eight (8) times during his interrogation.

87. Plaintiff requested to speak with an attorney three (3) times in the first eight (8) minutes of the Investigator's questioning, though the interrogation continued for roughly another thirty (30) minutes.

88. The actions of Investigators, by continuing to interrogate Plaintiff after he clearly invoked his right to counsel, violated Plaintiff's rights and the interrogation was ordered to be suppressed by the Honorable Robert Edwards.

89. Although an arrest warrant had been issued for Plaintiff, the knowingly, intentionally, or recklessly omission of certain facts in the Investigator's affidavit was unlawful and prejudicial to Plaintiff and violated his rights.

90. That had the Investigator's affidavit included all information that was known or should have been known by the Investigators, probable cause to issue the arrest warrant would not have been established.

91. Hon Robert Edwards ordered that all evidence collection must cease by Oct. 2, 2017, in order to allow defense sufficient time prior to trial to review evidence.

92. On November 9, 2017, the State's Motion to nolle prosequi Plaintiff's charges was based upon additional evidence that was expected to be discovered and that DNA testing would not be completed within the time frames set by the Court and that the Motion is not filed merely to avoid speedy trial and the Defendant is not prejudiced. [Attached as Exhibit C]

93. On May 10, 2018, one (1) year after filing charges on the Plaintiff in this case and six (6) months after filing the State's Motion to nolle prosequi, a Searcy Police Investigator provided an interview to Fox 16 News and stated that the investigation is ongoing.

94. As of November 15, 2018, no new information or discovery has been provided to defense counsel that relates to this case.

95. That the State has improperly tolled Plaintiff's speedy trial rights in his criminal case which have resulted in not only prejudicing Plaintiff, but has exasperated his anxiety, stress, and loss of faith and trust of law enforcement and the criminal justice system.

96. As a result of The City of Searcy, Arkansas, and Searcy Police Department's lack of interest in providing appropriate supervision, training, and guidance to their officers and investigators was the direct and proximate cause of the illegal arrest, interrogation, detention, and attempted prosecution of Plaintiff.

97. The above policies, practices, and customs have resulted in an "above the law" attitude by Searcy Police Officers and Investigators for The City of Searcy, Arkansas, and have subjected citizens to unlawful actions by law enforcement.

98.   As a direct and proximate result of the grossly negligent and/or intentionally malicious acts of the Defendants, the Plaintiff, Mr. Brandon Lee Wheeler, was in fact injured and suffered the following injuries and damages:

a.  Violation of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution not to be subjected to unreasonable seizure of a free citizen;

b. Violation of his constitutional rights under the Fifth and Fourteenth Amendment to the United States Constitution not to be deprived of liberty or property without due process of law;

c.  Violation of his constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution not to be subjected to cruel and unusual punishment or excessive bail;

d.  Violation of his constitutional rights under Article II, section 15, of the Arkansas Constitution not to be subjected to the unreasonable seizure of a free citizen;.

e.  Violation of his constitutional rights under Article II, section 8, of the Arkansas Constitution to not be deprived of liberty or property without due process of law;

f.  Violation of his constitutional rights under Article II, section 9, of the Arkansas Constitution to not have cruel and unusual punishment or excessive bail;

g.  Violation of his statutory rights under 42 U.S.C. § 1983 to not be wrongfully deprived of any rights, privileges, or immunities secured by the Constitution and laws by another who is acting under color of any statute, ordinance, regulation, custom, or usage of any State;

h. Violation of his statutory rights under <u>A.C.A.</u> § 16-123-105 not to be wrongfully deprived of any rights by another who is working under color of any statute, ordinance, regulation, custom, or usage of a political subdivision of the State of Arkansas;

99. The Defendants' actions were performed under color of State law, and violated Plaintiff's rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution.

100. The conduct of Defendants was either grossly negligent and/or willful and malicious that exhibited flagrant disregard for Plaintiff's federally secured Due Process Rights.

101. The inadequate supervision, training, and discipline of Police Officers and Investigators by The City of Searcy, Arkansas, has led to the damages suffered by Plaintiff.

**COUNT I**
**VIOLATION OF 42 U.S.C. §1983 AGAINST ALL DEFENDANTS**

102. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 101 as if fully set forth herein.

103. As described above, the intentional, knowing, and reckless actions of the Defendants were the cause in fact of the damages suffered by Plaintiff.

104. Plaintiff was harmed, incurred considerable expenses and lost wages that would not otherwise have been incurred, faced multiple felony charges, and has suffered the loss of confidence in law enforcement, as well as, shock, shame, and emotional scarring, all compensable as emotional distress and other damages.

105. Accordingly, these Defendants are liable to Plaintiff under 42 U.S.C. §1983.

**WHEREFORE**, Plaintiff hereby demands judgment against all Defendants, jointly and severally, for actual, general, special, and compensatory damages in an amount in excess of $1,000,000.00. Plaintiff further demands judgment against all Defendants, jointly and severally for

punitive damages in an amount to be determined by the jury, which should exceed $1,000,000.00, plus the cost of this action, including attorneys' fees, and such other relief the Court deems just and proper.

## COUNT II
### VIOLATION OF 42 U.S.C. §1983 AGAINST ALL DEFENDANTS

106.  Plaintiff restates and re-alleges the allegations contained in Paragraphs 1 through 105 as though fully set forth herein.

107.  As described above, the actions of Defendants in the omission of relevant and known evidence in the affidavit for Plaintiff's warrant of arrest were performed under color of state law and violated Plaintiff's rights guaranteed under the Fourth, Fifth, Eighth, and Fourteenth Amendment of the United States Constitution.

108.  The actions of Defendants to condone, disregard, and/or haphazardly investigate and divulge known information from those investigations in sworn affidavits illustrates how The City of Searcy, Arkansas, and The Searcy Police Department are failing to properly discipline and train officers and these actions and inactions were the direct and proximate cause of the specific acts of unlawful detention, interrogation, arrest, and prosecution, with no reasonable justification, against Plaintiff which resulted in serious and ongoing injuries to Plaintiff.

109.  Conduct of Defendants was willful, malicious, reasonably certain to cause injury to Plaintiff, and exhibited a flagrant disregard for Plaintiff's federally secured Due Process Rights.

110. Accordingly, Defendants are liable to Plaintiff under 42 U.S.C. §1983.

**WHEREFORE**, Plaintiff hereby demands judgment against all Defendants, jointly and severally, for actual, general, special, and compensatory damages in an amount in excess of

$1,000,000.00. Plaintiff further demands judgment against all Defendants, jointly and severally for punitive damages in an amount to be determined by the jury, which should exceed $1,000,000.00, plus the cost of this action, including attorneys' fees, and such other relief the Court deems just and proper.

**COUNT III**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**AGAINST ALL DEFENDANTS**

111. Plaintiff restates and re-alleges the allegations contained in Paragraphs 1 through 110 as though fully set forth herein.

112. Under color of law, Defendants continually and intentionally inflicted emotional distress on Plaintiff by interfering with his Civil Rights.

113. Defendants' conduct was extremely outrageous, transcending all possible bounds of human decency, and was utterly intolerable in a civilized community.

114. Defendants' actions were the cause of Plaintiff's distress.

115. Plaintiff is a reasonable man.

116. Emotional distress sustained by Plaintiff was severe in a nature that no reasonable man could be expected to endure.

117. Plaintiff was inflicted, and with a high degree of likelihood will continue to be inflicted, with emotional distress due to the intentional behavior of Defendants.

118. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered, and with a high degree of likelihood will continue to suffer severe mental pain, anxiety, anguish, shame, embarrassment, humiliation, and other sever emotional trauma damages in excess of $1,000,000.00.

**WHEREFORE**, Plaintiff hereby demands judgment against all Defendants, jointly and severally, for actual, general, special, and compensatory damages in an amount in excess of $1,000,000.00. Plaintiff further demands judgment against all Defendants, jointly and severally for punitive damages in an amount to be determined by the jury, which should exceed $1,000,000.00, plus the cost of this action, including attorneys' fees, and such other relief the Court deems just and proper.

**COUNT IV**
**<u>PUNITIVE DAMAGES - ALL DEFENDANTS</u>**

119.  Plaintiff restates and re-alleges the allegations contained in Paragraphs 1 through 118 as though fully set forth herein.

120.  Defendants' conduct as described above was outrageous due to Defendants' evil motive or reckless indifference to the rights of others.

121.  As a direct and proximate result of the intentional acts of Defendants, Plaintiff suffered mental anguish, including anxiety, shame, grief, embarrassment, and humiliation, causing damages in excess of $1,000,000.00.

**WHEREFORE**, Plaintiff further prays for judgment against Defendants in an amount that is fair and reasonable under the circumstances to punish Defendants and deter Defendants and others from like conduct, together with other such relief that the Court deems just and proper.

**<u>PRAYER FOR RELIEF</u>**

Plaintiff demands judgment, including interest, against Defendants and respectfully requests the Court enter judgment in his favor and against Defendants as follows:

1.  Awarding Plaintiff damages according to proof;

2.  Awarding Plaintiff injunctive relief that would exclude the State from improperly tolling speedy trial in his former criminal case;

3.  Awarding Plaintiff lost wages;

4.  Awarding Plaintiff any additional damages that he may suffer from the date of this Complaint through the date of trial;

5.  Awarding Plaintiff pre-judgment interest;

6.  Awarding Plaintiff his costs and attorneys' fees included herein; and,

7.  Awarding Plaintiff such other relief the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all counts and claims in this action.

Respectfully submitted,

PETTY LAW FIRM

J. Michael Petty  Bar #2016183
D. Paul Petty  Bar #71063
411 West Arch Avenue
Searcy, Arkansas 72143
(501) 268-7161
(501) 268-9895 FAX
ATTORNEYS FOR PLAINTIFF

**AFFIDAVIT**
**CASE NUMBER: 94-10-139**
**Brandon Lee Wheeler**
**W/M, DOB: 06-04-1975**
**SSN: 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**
**ATN: N/A**

COMES NOW, **DETECTIVE ADAM SEXTON**, OF THE SEARCY POLICE DEPARTMENT AND AFTER BEING SWORN ON OATH STATES:

On Wednesday, October 5, 1994 David Green made a missing persons report with the Searcy Police Department. Mr. Green reported his 20 year old son, Jarrod Devlin Green, left his home of 72 Country Club Circle in Searcy, AR on September 30, 1994 to meet Brandon Wheeler in relation to a drug debt owed to Mr. Wheeler. Mr. Green explained shortly before this report, Jarrod Green's vehicle had been located in the Searcy, AR Wal-Mart parking lot with the windows down and the keys in the floor board. Mr. Green said Jarrod Green had not been seen or heard from by anyone since September, 30, 1994.

On Wednesday, November 2, 2016, I, Detective Adam Sexton, Detective Mark Kidder, and Detective Nick Darnell re-opened this case for further investigation. During the course of this investigation there have been many witnesses interviewed in regards to Jarrod Green's disappearance. Witnesses which were interviewed agreed that there was a conflict between Brandon Wheeler and Jarrod Green which concerned a debt owed to Mr. Wheeler by Jarrod Green.

On July 17, 1995 witness 1 made a statement both verbally and in written form to Law Enforcement. Witness 1 stated he was approached by Brandon Wheeler and Wheeler's roommate in 1994, prior to Jarrod Green's disappearance and offered one thousand ($1,000.00) dollars to get rid of Jarrod Green. After Jarrod Green's disappearance Brandon Wheeler and his roommate came back to witness 1 and stated Jarrod Green had been done away with. Witness 1 also provided details about Brandon Wheeler and his roommate grabbing Jarrod Green at the Wal-Mart Super Center store parking lot. Original Police reports show Jarrod Green's vehicle was found at the Wal-Mart Super Center parking lot.

On December 8, 2016 myself (Detective Sexton), along with Detective Mark Kidder, and Detective Nick Darnell interviewed witness 2 at the Branson Police Department in Branson, MO. Witness 2 explained on the night of Jarrod Green's disappearance, he met with Jarrod at the Searcy Country Club parking lot per Jarrod Green's request. Witness 2 explained at that particular time he possessed Jarrod Green's .38 Rossi revolver. Witness 2 went on to say when Mr. Green arrived he requested he have his revolver back due to a meeting he was about to have with Brandon Wheeler. Witness 2 said Jarrod Green told him he needed his gun for protection against Brandon Wheeler. Witness 2 said after he gave Jarrod Green his gun, he told Jarrod to be careful and then left the area. Witness 2 provided a written statement that will be retained in this case file.

EXHIBIT
"A"

On December 13, 2016 a written statement was obtained from witness 3. Witness 3 said shortly before Jarrod Green went missing, Jarrod left home to get away from who she believed to be Brandon Wheeler.  Witness 3 said about a week before Jarrod Green went missing he received a phone call telling him he had nothing to worry about and that no one was after him anymore. Witness 3 stated Jarrod then came back home to Searcy, AR and stayed at his parent's residence. Witness 3 stated approximately one week later Jarrod went missing.  Witness 3 provided a written statement that will be retained in this case file.

On December 14, 2016 myself (Detective Sexton) and Detective Mark Kidder interviewed Witness 4 at the Searcy Police Department in Searcy, AR.  Witness 4 explained she and Jarrod Green were in a relationship at the time of his disappearance. Witness 4 said Jarrod Green begged her to come along with him on the night he went missing. Witness 4 said Jarrod Green was acting out of character during her conversation with him. Witness 4 said Jarrod Green was crying and begging her to come with him. Witness 4 said she opted not to go with Jarrod Green and never seen or heard from his since that phone call. Witness 4 provided a written statement that will be retained in this case file.

On December 14, 2016 Detective Mark Kidder obtained a written statement from witness 5. Witness 5 explained he was friends with Jarrod Green during the time that Jarrod went missing. Witness 5 said that about a week or two before Jarrod went missing, Jarrod approached him at his residence in Jonesboro, AR. During the conversation between witness 5 and Jarrod Green, Jarrod said Brandon Wheeler fronted him a lot of "dope". Witness 5 said Jarrod Green told him he did not have any intention to pay Brandon Wheeler back due to being 'ripped off' by Brandon Wheeler so many times before.  Witness 5 said this was the last time he saw Jarrod Green.

Approximately ten (10) months later, after the disappearance of Jarrod Green, Brandon Wheeler's roommate and best friend was reported as a missing person by his mother. Reference Case number 97-12-563. An investigator reported during this time, the aforementioned individual was bragging he was a part of the disappearance of Jarrod Green, just before his own disappearance.

On December 31, 2000 another close friend and roommate of Brandon Wheeler, who was also good friends with Jarrod Green during the time of Jarrod Green's disappearance, committed suicide. Prior to committing suicide, this subject gave disclosure of two separate murders to his cousin who was also his pastor.

On December 19, 2016 a search warrant was signed by a judge for property of interest in connection with this case in rural White County Arkansas. From December 20, 2016 through December 23, 2016 the aforementioned uninhabited property was searched due to evidence found confirming information obtained from various sources in this investigation. This information indicated Jarrod Green's body was disposed of at this location. Certified Cadaver dogs were used successfully in locating the aforementioned evidence.

EXHIBIT
"A"

I, therefore, request a warrant be issued for Brandon Lee Wheeler, for Capital Murder in violation of A.C.A. §5-10-101 a Class Y Felony, Abuse of a Corpse, A.C.A 5-60-101, a Class C Felony.

This case is under investigation.

Det. Adam Sexton 212

STATE OF ARKANSAS

COUNTY OF WHITE

SUBSCRIBED AND SWORN TO BEFORE ME THIS 20th DAY OF March 2017.

NOTARY

KELLI M. SHAW
No. 12384762
NOTARY
PUBLIC
EXPIRES
10.29.2021
WHITE COUNTY - ARKANSAS

EXHIBIT
"A"

MISSING CHILDREN...HELP CENTER
410 Ware Boulevard, Suite 400
Tampa, Florida 33619
(813)623-KIDS - 1/800/USA-KIDS

cc: Sgt. Story
Searcy P. D.

### S I G H T I N G S

DOES CALLER WANT HIS/HER NAME HELD CONFIDENTIAL...YES _____     NO

DATE: __8/8/96_____         TIME: _____

NAME OF CHILD SIGHTED: JARROD GREEN    DOB: 5/7/74    NCIC#: 774665311
WHERE SIGHTING TOOK PLACE: Spartanburg, SC
ADDRESS OF SIGHTING: 257 Una Holly Park, Spartanburg, SC
NAME OF CALLER: Tracey Peelers
ADDRESS OF CALLER: same as above
TELEPHONE NUMBER OF CALLER: no telephone
REMARKS/DESCRIPTION OF SIGHTING: Caller received an Advertising card in the mail with
Jarrod's photo on one side of card. The said that Jarrod is her fiancee and she is
pregnant at this time. She stated they have a great relationship. She said that he
said his parents would probably not be worried about him and she has tried to talk
with him to get him to contact his parents. She said they live in a trailer at the
above address. She also stated that he works as a mechanic.


LAW ENFORCEMENT AGENCY, ADDRESS AND TELEPHONE NUMBER: Sgt. Story, Searcy Police Dept.
FAX: 501/279-1023.

DATE CALLED: 8/8/96      TIME CALLED: 11:00 a.m.   CONTACT: Sgt. Story

CUSTODIAL PARENT(S), ADDRESS AND TELEPHONE NUMBER: _____
David Green, 72 Country Club Circle, Searcy, AR  72143.

EXHIBIT
tabbies
"B"

SIGHTING SUBMITTED BY BARBARA MCKINLEY.

P.0

CR2017- 004812

IN THE CIRCUIT COURT OF WHITE COUNTY, ARKANSAS
SECOND DIVISION

STATE OF ARKANSAS,

PLAINTIFF

VS                                    73 CR-17-314

BRANDON LEE WHEELER,                                    DEFENDANT

**FILED NOV 0 9 2017 TAMI KING**

## MOTION

COMES NOW the State of Arkansas, by and through Prosecuting Attorney Rebecca D. Reed McCoy, and moves to nolle prosequi the charges of Capital Murder and Abuse of a Corpse filed on May 5, 2017, for the reason additional evidence is expected to be recovered and DNA testing would not be completed within the time frames set by the Court. This Motion is not filed merely to avoid speedy trial and the Defendant is not prejudiced.

Respectfully submitted,

Rebecca D. Reed McCoy
Prosecuting Attorney

**FILED NOV 0 9 2017 TAMI KING**

## ORDER

The State's Motion is granted for the reasons stated. The State has shown good cause as required in Arkansas Rules of Criminal Procedure 28.3 (f) and (h), and the time from the entry of this Order to any subsequent refiling is excluded in calculating speedy trial.

Robert Edwards
Circuit Court Judge

11-8-2017
Date

APPROVED:

PAUL PETTY,
ATTORNEY FOR DEFENDANT



EXHIBIT "C"