# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

| | |
|---|---|
| BRANDON LEE WHEELER | * |
| PLAINTIFF | * |
| | * |
| V. | * |
| | *   CASE NO.  4:18CV00859 SWW |
| | * |
| CITY of SEARCY, ARKANSAS, ET AL. | * |
| | * |
| DEFENDANTS | * |
| | * |

## OPINION and ORDER

Plaintiff Brandon Lee Wheeler ("Wheeler") brings this action under 42 U.S.C. § 1983, charging that his constitutional and state law rights were violated when he was arrested for capital murder and abuse of a corpse, charges that a prosecutor eventually dismissed by *nolle prosequi*. By order entered May 27, 2020 [ECF No. 49-1], the Court granted in part and denied in part Defendants' first motion for summary judgment. The claims that remain are individual-capacity claims against Searcy Police Department officers Mark Kidder ("Kidder"), Adam Sexton ("Sexton"), and Nick Darnell ("Darnell"), charging that they recklessly or deliberately provided a misleading affidavit in support of the warrant issued for Wheeler's arrest. Before the Court is Defendants' second motion for summary judgment [ECF Nos. 62, 63, 64], Wheeler's response in opposition [ECF Nos. 67,

1

68, 69], and Defendants' reply [ECF No. 72].  After careful consideration, and for reasons that follow, the second motion for summary judgment is denied.

## I.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986)

The non-moving party may not rest on mere allegations or denials of his pleading but must come forward with 'specific facts showing a genuine issue for trial. *Id*. at 587.  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).

## II.

In November 2016, Kidder, Sexton, and Darnell (collectively, "the officers") reopened a missing person case regarding Jarrod Green ("Green"), who had disappeared on September 30, 1994. During the course of the reopened investigation, the officers consulted prosecuting attorney Rebecca Reed McCoy ("McCoy"), and she reviewed evidence and information that the officers gathered as the investigation progressed. Eventually, Sexton prepared an affidavit for Wheeler's arrest for capital murder and abuse of a corpse. McCoy reviewed and approved the affidavit and made corrections and changes, and Sexton signed the final draft on March 28, 2017.[1]

The warrant affidavit disclosed, among other things, that on September 17, 1995, "Witness 1," a person named Charles Langley ("Langley"), told law enforcement that in 1994, prior to Green's disappearance, Wheeler offered him one thousand dollars to "get rid" of Green. The affidavit further stated that Langley told officer that after Green's disappearance, Wheeler told him that Green had been "done away with." Sexton's affidavit *did not* disclose that in March 2000 and November 2017, Langley recanted his initial statement, explaining that he was

---

[1] Defendants provided a copy of the warrant affidavit with their first motion for summary judgment (ECF No. 19-1, at 48-50), and the Court set forth the entire affidavit in its May 27, 2020 opinion and order denying in part and granting in part Defendant's motion (ECF No. 49, at 5-7).

3

facing charges in September 1995 and that he made the statement to avoid going to prison.

The last paragraph of the affidavit stated:

On December 19, 2016, a search warrant was signed by a judge for property of interest in connection with this case in rural White County Arkansas. From December 20, 2016 through December 23, 2016[,] the aforementioned uninhabited property was searched due to evidence found confirming information obtained from various sources in this investigation. This information indicated Jarrod Green's body was disposed of at this location. Certified Cadaver dogs were used successfully in locating the aforementioned evidence.[2]

Contrary to the foregoing language, which indicated that Green's remains had been recovered, no physical evidence of Green's remains was ever found.

On April 6, 2017, McCoy and the officers appeared before White County Circuit Court Judge Robert Edwards, and they presented Sexton's affidavit. Judge Edwards issued a warrant for Wheeler's arrest on charges of capital murder and abuse of a corpse, and on May 10, 2017, McCoy issued an information charging Wheeler with those crimes. Thereafter, authorities arrested Wheeler in Ohio, and he was transported to Arkansas, where he was detained. On June 5, 2017, Wheeler was released on bail, and on November 9, 2017, McCoy moved to *nolle pros* the charges against Wheeler, for the stated reason that "additional is evidence expected

---

[2]ECF No. 19-1, at 48.

to be recovered and DNA testing would not be completed with the time frames set by the Court."[3]

On November 16, 2018, Wheeler filed this action, claiming among other things that the officers violated his Fourth Amendment rights by knowingly or recklessly omitting material facts from the warrant affidavit.[4] Wheeler argued that the probable cause affidavit presented to Judge Edwards contained two glaring omissions: (1) that Langley completely recanted his September 17, 1995 statement and (2) that the December 2017 searches uncovered no evidence of human remains or physical evidence connected to Green.

Regarding Langley's recantations, McCoy testifies by affidavit: "I did not tell . . . Sexton to omit the language that Mr. Langley had recanted his story."[5] McCoy further testifies that after the affidavit was completed, she believed it was "true, accurate and presented sufficient evidence to meet the probable cause requirement for issuance of an arrest warrant."[6]

---

[3]ECF No. 19-1, at 53.

[4]ECF No. 1, ¶ 89 ("Although an arrest warrant [was issued], the knowingly, intentionally, or recklessly omission of certain facts in the . . . affidavit was unlawful and prejudicial to Plaintiff and violated his rights.").

[5]ECF No. 21-1, ¶ 11; ECF 64-3, ¶ 11.

[6]ECF No. 21-1, ¶ 12; ECF 64-3, ¶ 12.

According to Sexton, McCoy told the officers that Langley's original "1995 statement would be allowed in the affidavit as long as we provided what we learned in other interviews with him."[7]  ECF No. 64-2, ¶ 3.  Sexton adds: "All Searcy Police Department interviews conducted with Charles Langley were provided to the case file and were thus available through discovery."  *Id.*  Sexton does not state that he or anyone else informed Judge Edwards that Langley had twice recanted his original statement implicating Wheeler.[8]

---

[7] Kidder has submitted an affidavit, and his testimony tracks Sexton's.  Kidder testifies that he and the other officers informed McCoy about Langley's recantations and "McCoy stated [that] we should put Langley's initial statement into the affidavit as long as the other interviews were included in the case file." ECF No. 64-1, ¶ 6.

[8] The pertinent portion of Sexton's affidavit reads:

> Upon the completion of the affidavit, Prosecutor McCoy asked Mark Kidder and I to meet her in Judge Robert Edwards chambers. Prosecutor McCoy said she was taking us along to chambers with her in case Judge Edwards had any questions regarding the affidavit. While at the Judge's chambers I remember Judge Edwards offering me a piece of candy from his candy dish.  I remember him looking over the affidavit and he was recalling meeting the Green family when he was campaigning in the 1990's. Judge Edwards read over the affidavit and asked several questions regarding its contents. As Detective Kidder, Prosecutor McCoy, and I were leaving, Judge Edwards said if we wanted[,] we could wad the affidavit up and throw it in the trash can, in a joking manner.

ECF No. 64-2, ¶ 7.

Regarding the last paragraph of the affidavit, which indicated that cadaver dogs had successfully located physical evidence of Green's remains, Sexton testifies that McCoy approved of the wording because "she considered the cadaver dogs' indication evidence as we did."[9] It is undisputed that contrary to wording of the affidavit, the officers knew that the cadaver dogs merely showed an interest in an area near a deer stand, but the search did not recover physical evidence of a dead body.

The record is void of evidence regarding any additional information, beyond the contents of the warrant affidavit, that Judge Edwards received prior to issuing the arrest warrant. Kidder and Sexton recall the recall that Judge Edwards asked them questions, but the Court is without any information regarding the content of the questions and answers.[10] McCoy testifies that she and the officers "visited with . . . Judge Edwards and discussed with him the issue of whether there was probable cause to issue a bench warrant to arrest . . . Wheeler."[11] McCoy reports: "After

---

[9] ECF No. 64-2, ¶ 6.

[10] ECF No. 64-2, ¶ 7 (Sexton Aff.)("Judge Edwards read over the affidavit and asked us several questions regarding its contents."); ECF No. 64-1, ¶ 14 (Kidder Aff.)("We met with Judge Edwards for approximately forty-five minutes, during which time the Judge questioned Det. Sexton and I about each paragraph of the affidavit.").

[11] ECF No. 21-1, ¶ 13 (McCoy Aff. 1st Mot. Summ. J.); ECF No. 64-3, ¶ 13 (McCoy Aff. 2d Mot. Summ. J.).

7

reviewing the affidavit, and discussing this matter with Judge Edwards, he issued a bench warrant charging . . Wheeler with Murder and Abuse of a Corpse." In deposition, however, McCoy recalled that Judge Edwards relied solely on the contents of the affidavit to make a probable cause determination:

> Q: Who presented the affidavit to Judge Edwards, these officers?
>
> A: Who handed it to him?
>
> Q: Well, who told him what the contents were and explained why they thought they had a sufficient basis to proceed?
>
> A: I don't know that - - I don't recall any of us making any statements to the judge. We went in, handed . . . the judge the affidavit, and the information and warrant. And I think the only thing that was said - - the only thing I recall being said to the Judge was, "Judge I brought them in case you had any questions."
>
> Q: Then he just read it and signed it?
>
> A: He did.
>
> Q: So he didn't - -
>
> A: I don't recall him asking any questions of making any statements.
>
> Q: He relied particularly on the affidavit as presented?
>
> A: Yes.[12]

---

[12] ECF No. 67-1, at 33.

## III.

With Defendants' first motion for summary judgment, they argued that Wheeler's arrest was supported by probable cause and that the officers were entitled to qualified immunity. By order and opinion entered May 27, 2020, the Court denied the officers' application for qualified immunity.[13]

The first prong of the qualified immunity analysis asks whether the facts show a violation of a constitutional or statutory right. *Nord v. Walsh Cty.*, 757 F.3d 734, 738 (8th Cir. 2014) (citations omitted). Pertinent here, "'[w]here the judicial finding of probable cause is based solely on information the officer knew to be false or would have known was false had he not recklessly disregarded the truth, not only does the arrest violate the Fourth Amendment, but the officer will not be entitled to good faith immunity.'" *Small v. McCrystal*, 708 F.3d 997, 1006–07 (8th Cir. 2013) (quoting *Myers v. Morris,* 810 F.2d 1437, 1457 (8th Cir.1987), *abrogated on other grounds by Burns v. Reed,* 500 U.S. 478, 111 S. Ct. 1934 (1991)). As stated more fully in the Court's order and opinion, the undisputed summary judgment record showed that the officers appeared before Judge Edwards and sought a warrant based solely on Sexton's affidavit, knowing that it omitted facts material to the determination of probable cause. Accordingly, the evidence

---

[13]ECF No. 49.

9

established a Fourth Amendment violation, regardless of whether the officers had probable cause to arrest Wheeler.[14]

The second prong of the qualified immunity analysis asks "whether [the constitutional right in question] was clearly established at the time of the defendant's alleged misconduct." *Nord,* 757 F.3d at 738 (citations omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202, 121 S. Ct. 2151, 2156 (2001) (citation omitted). Applying this standard to cases involving false and misleading warrant affidavits, the Eighth Circuit has held that "qualified immunity is appropriate if [the] defendant has been accused of submitting a recklessly false

---

[14]The Fourth Amendment guarantees that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend IV. "The Warrant Clause is not merely a probable-cause guarantee. It is a guarantee that a warrant will not issue unless a neutral and disinterested magistrate independently decides that probable cause exists." *Rainsberger v. Benner*, 913 F.3d 640, 650 (7th Cir. 2019) (citing *Franks v. Delaware*, 438 U.S. 154, 164, 98 S. Ct. 2674 (1978) and *Johnson v. United States*, 333 U.S. 10, 14, 68 S. Ct. 367 (1948)). The Eighth Circuit has recognized the difference between an allegation that a plaintiff was arrested without probable cause and "a similar, but distinct, claim that [the defendant] violated [the plaintiff's] fourth amendment rights by submitting a false and misleading affidavit in support of the warrant for his arrest." *Murray v. Lene*, 595 F.3d 868, 872 (8th Cir. 2010) (citing *Bagby v. Brondhaver,* 98 F.3d 1096, 1097-98 (8th Cir.1996)).

affidavit [,] and . . . a corrected affidavit would still provide probable cause to arrest or search." *Bagby v. Brondhaver*, 98 F.3d 1096, 1099 (8th Cir. 1996).

In this case, after editing out the incomplete and false portions of the warrant affidavit, the Court found that the remaining affidavit testimony, which did not establish that Green was dead or that his disappearance was caused by the criminal act of another person, was insufficient to establish probable cause to arrest Green for capital murder or abuse of a corpse. Accordingly, the Court declined to grant summary judgment in the officers' favor.

## IV.

The officers have filed a second motion for summary judgment, citing *Messerschmidt v. Millender*, 565 U.S. 535 (2012) for the proposition that McCoy's approval of the warrant affidavit entitles them to qualified immunity. In *Messerschmidt*, the plaintiffs sued under § 1983, claiming that a search of their home violated the Fourth Amendment because the underlying warrant was overbroad.[15] Unlike this case, *Messerschmidt* did not involve a charge that

---

[15]Officer Curt Messerschmidt, one of the defendants, drafted the underlying warrant affidavit and assisted in carrying out the search. In addition to seeking a search warrant for a sawed-off shotgun involved in the specific crime detailed in his affidavit, Messerschmidt sought and received a warrant permitting a search for gang-related materials and a broad category of firearms and firearm-related material. *Messerschmidt v. Millender*, 565 U.S. 535, 132 S. Ct. 1235, 1238 (2012).

officers knowingly or recklessly included false or misleading information in an arrest warrant application. In fact, the Supreme Court specifically noted the absence of any contention that the warrant affidavit was misleading or omitted facts. *Messerschmidt*, 565 U.S. at 546 n.2, 132 S. Ct. at 1244 n.2.

Instead, the question in *Messerschmidt* was this: Even if the search warrant were improperly issued, were the defendants entitled to immunity from damages? The Supreme Court enumerated several reasons why a reasonable officer in the defendants' position would have believed that the scope of the warrant was supported by probable cause, *including but not limited to* the fact that the officers had obtained approval of the warrant application. The Court stated:

> On top of all this, the fact that the officers sought and obtained approval of the warrant application from a superior and a deputy district attorney before submitting it to the Magistrate provides further support for the conclusion that an officer could reasonably have believed that the scope of the warrant was supported by probable cause.

*Messerschmidt,* 565 U.S. at 553, 132 S. Ct. at 1249.

Defendants propose that *Messerschmidt* "is no different that this case" and requires the same outcome.[16] The Court disagrees. Even if it were permissible for

---

[16]Defendants also *Nord v. Walsh Cty.*, 757 F.3d 734 (8th Cir. 2014) for the proposition that McCoy's approval of the warrant affidavit makes a difference. In *Nord*, deputy sheriff Ron Nord ran for sheriff, challenging the incumbent. The incumbent sheriff won the race and then terminated Nord for comments he had made during the campaign. Nord filed suit, asserting a First Amendment retaliation claim, and the sheriff moved for summary judgment asserting qualified immunity, which the district court denied. The Eighth Circuit reversed, finding

this Court to go beyond the four corners of the warrant affidavit and consider that the officers had consulted McCoy and gained her approval,[17] it would not alter the Court's finding that the officers are not entitled to qualified immunity.

The Eighth Circuit has advised that following legal advice of a city attorney, or in this case a prosecuting attorney, "does not automatically cloak one with qualified immunity, but rather, is used to show the reasonableness of the action taken. *E-Z Mart Stores, Inc. v. Kirksey*, 885 F.2d 476, 478 (8th Cir. 1989) (citing *Wentz v. Klecker,* 721 F.2d 244, 247 (8th Cir.1983)). In support of their assertion of qualified immunity, Sexton and Kidder recall inculpatory information that they obtained during their investigation, which they did not include in the warrant affidavit.[18] But the pertinent legal question that the officers faced when they

---

that the sheriff could have reasonably believed that Nord's statements were unprotected based on several factors, including that a county attorney advised that the sheriff was within her authority to terminate Nord. Like *Messerschmidt*, Nord did not involve a claim that officers obtained a warrant based on a misleading affidavit.

[17]The Eighth Circuit has yet to resolve whether an officer who gives recklessly false testimony in support of a warrant could still be entitled to qualified immunity even if his corrected testimony failed to establish probable cause. *See Bagby v. Brondhaver*, 98 F.3d 1096, 1099 (8th Cir. 1996)("We have doubts about the converse statement in *Soares*—that defendant is never entitled to qualified immunity if the corrected affidavit is insufficient—because that rule may in some cases fail to serve the qualified immunity purpose of sparing all but the plainly incompetent from § 1983 damage liability.").

[18]For example, Kidder testifies that when the officers re-interviewed Langley and recanted his original statement, the results of a computer voice stress analysis

13

applied for an arrest warrant was not whether extra-affidavit information bolstered a finding of probable cause. *Rainsberger v. Benner*, 913 F.3d 640, 651 (7th Cir. 2019) ("And the Fourth Amendment is violated when the magistrate's probable-cause determination is made based on an affidavit that fails to establish probable cause, no matter what extra-affidavit information the officer had."). Instead, the question that confronted the officers was whether the Fourth Amendment permitted them to make false or misleading statements in an affidavit. There is no question that submitting a false and misleading affidavit in support of an arrest warrant violates clearly established law, and based on the undisputed evidence in this case, the information omitted from the affidavit made a difference and was material to the question of probable cause. Under these circumstances, even with McCoy's stamp of approval, no well-trained officer in defendants' position could reasonably but mistakenly conclude that it was lawful to omit information about Langley's recantations and the lack of physical evidence.

---

(CVSA) test indicated voice stressors, and the officers believed that he was not being truthful. ECF No. 64-1, ¶ 4. Additionally, Sexton testifies that a retired officer informed him that during the original missing person investigation in 1994 and 1995, an informant told him that Green's body had been buried under an old deer stand on certain property. Sexton further testifies that the cadaver dogs searched the property and showed interest on a spot under an old deer stand. ECF No. 64-2, ¶¶ 4-5.

## V.

For the reasons stated, Defendants' second motion for summary judgment [ECF No. 62] is denied.

IT IS SO ORDERED THIS 19TH DAY OF OCTOBER, 2020.

                                           <u>/s/Susan Webber Wright</u>
                                           UNITED STATES DISTRICT JUDGE