# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

September 29, 2021

Mr. Colin C. Heaton
HEATON & HARRIS
P.O. Box 111
Hot Springs, AR  71902-0111

Mr. Clyde Burt Newell
LAW OFFICES OF C. BURT NEWELL
P.O. Box 1620
Hot Springs, AR  71902-1620

RE:  20-3292  Brandon Wheeler v. Mark Kidder, et al

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Michael E. Gans
Clerk of Court

MVP

Enclosure(s)

cc:   Ms. Tammy H. Downs
Mr. Denny Paul Petty
Mr. James Michael Petty

District Court/Agency Case Number(s):  4:18-cv-00859-SWW

# United States Court of Appeals
## For the Eighth Circuit

---

No. 20-3292

---

Brandon Lee Wheeler

*Plaintiff - Appellee*

v.

City of Searcy, Arkansas; Eric Webb

*Defendant*s

Mark Kidder, Individually; Adam Sexton, Individually; Nick Darnell, Individually

*Defendants - Appellants*

Charley Perry; John Does

*Defendant*s

---

Appeal from United States District Court
for the Eastern District of Arkansas - Central

---

Submitted: April 15, 2021
Filed: September 29, 2021

---

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.

---

SMITH, Chief Judge.

Brandon Lee Wheeler brought an action under 42 U.S.C. § 1983, alleging that his constitutional and state-law rights were violated when he was arrested for committing capital murder and abuse of a corpse. Relevant to the present appeal, Wheeler asserted individual-capacity claims against Searcy Police Department Officers Mark Kidder, Adam Sexton, and Nick Darnell (collectively, "the officers"), alleging that they recklessly or deliberately provided a misleading affidavit in support of the warrant issued for Wheeler's arrest. The officers moved for summary judgment, citing *Messerschmidt v. Millender*, 565 U.S. 535 (2012), for the proposition that the prosecuting attorney's approval of the warrant affidavit entitles them to qualified immunity. The district court[1] denied qualified immunity after distinguishing *Messerschmidt* as "not involv[ing] a charge that officers knowingly or recklessly included false or misleading information in an arrest warrant application." *Wheeler v. City of Searcy*, No. 4:18-cv-00859-SWW, 2020 WL 6141041, at *4 (E.D. Ark. Oct. 19, 2020). The officers appeal the district court's denial of qualified immunity on the narrow issue of whether *Messrschmidt* compels summary judgment in their favor. We affirm.

## I. *Background*

On October 5, 1994, David Green ("David") reported to the Searcy Police Department that his 22-year-old son, Jarrod Green ("Green"), had been missing since September 30, 1994. According to the police report, David told officers that "his son had left [David's] home to meet with a Brandon Wheeler . . . because his son owed Brandon Wheeler money for drugs." Aff. to Statement of Facts at 22, *Wheeler v. City of Searcy*, No. 4:18-cv-00859-SWW (E.D. Ark. 2020), ECF No. 21-1 (all caps

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

-2-

omitted). After receiving the missing-person report, the police began investigating Green's disappearance.

### A. *Langley's Statement*s

In 1995, an individual named Charles Langley provided a written statement to law enforcement that implicated Wheeler in Green's disappearance. He indicated that during a drug deal, Wheeler and Jason Webb had inquired if Langley would be willing "to get rid of" Green "because he owed [Wheeler and Webb] $7500.00" *Id.* at 23. Langley also stated that, on a later date, Wheeler and Webb told him that "Green was no longer a problem" because they "took care of him." *Id.* Police believed that "Langley's . . . statement . . . that Wheeler and Webb told him that they grabbed Green at Walmart and 'took care of him' . . . [was] corroborated [by] the fact that Green's car was discovered abandoned in the Walmart parking [lot]." *Wheeler v. City of Searcy*, No. 4:18-cv-00859-SWW, 2020 WL 2758898, at *6 n.13 (E.D. Ark. May 27, 2020). Based on the limited available evidence, the police suspected that Green was deceased and that Wheeler had murdered him; however, they did not pursue charges against Wheeler because of lack of evidence.

Almost five years later, on March 9, 2000, Officer Charles Perry interviewed Langley while he was imprisoned at the St. Francis County Jail. "Langley renounced the portion of his original statement implicating Wheeler, and he said that 'most' of his original statement was a lie." *Id.* In his written statement to Officer Perry, Langley stated:

> I knew the reason for Det. Perry coming . . . [,] and it was about Jarrod Green, the boy that came up missing back in 1994. He asked me if I could tell him about the people I was dealing with around that time and why I said that I could shed some light on Jarrod being missing. I told Det. Perry that I was on my way to prison at the time that I made the statement . . . [,] and most of what I told him was stuff that was being spread around the drug community. I explained that I did not even know

-3-

the guys, meaning Brandon Wheeler and Robert Webb, at the time that Jarrod came up missing. I had my first dealings with Wheeler and Webb either in late 1994 or early 1995. The two were always carrying guns and at one point in early [1995] they had left a glock 45 at my house for several days. The statement that I had made [in 1995] . . . was an attempt to shorten my stay or possibly even keep me from going to prison, but most of which was a lie.

Aff. to Statement of Facts at 24.

Over 16 years later, in November 2016, Officers Kidder, Darnell, and Sexton reopened Green's missing-person case. Investigative notes indicate that the officers interviewed Langley a third time; Langley reiterated the recantation of his 1995 statement. Thereafter, the officers requested that Langley submit to a polygraph test; Langley consented. The polygraph examiner concluded that "Langley was being deceptive on more than one question." Ex. 1 to Br. in Supp. of Mot. for Summ. J. at 2, ¶ 6, *Wheeler v. City of Searcy*, No. 4:18-cv-00859-SWW (E.D. Ark. 2020), ECF No. 64-1. The officers communicated the results of the polygraph test to their supervisor, as well as Prosecuting Attorney Rebecca Reed McCoy ("Prosecutor McCoy").

## B. *Wheeler's Arrest*

Based on evidence not identified in the record, investigating officers surmised that Green's remains could be found at a particular rural property of interest. They searched that property on December 13, 2016, using a certified cadaver dog. A police mission report documented the search and stated that the dog was "brought to the point last seen and allowed to take inventory of the odors in the area prior to being scented." Aff. to Statement of Facts at 28. This meant that the dog handler had exposed the dog to Green's scent before the search proceeded. According to the mission report, the dog showed repeated interest in a spot near an old deer stand, an area that a confidential informant had described. On December 17, 2016, the officers

-4-

searched the property with additional certified cadaver dogs. Both dogs reacted to the same spot in which the prior dog had shown an interest. The search extended to a pond on the property. The pond was drained, but no physical evidence of human remains was ever found.

During the reopened investigation, the officers consulted Prosecutor McCoy. She reviewed the evidence. Officer Sexton prepared a sworn affidavit to obtain a warrant for Wheeler's arrest for capital murder and abuse of a corpse. He signed the affidavit on March 28, 2017. At some point, Prosecutor McCoy reviewed the affidavit. In reviewing the affidavit, Prosecutor McCoy "made corrections and changes to [it]." Ex. 3 to Br. in Supp. of Mot. for Summ. J. at 2, ¶ 10, *Wheeler v. City of Searcy*, No. 4:18-cv-00859-SWW (E.D. Ark. 2020), ECF No. 64-3. "After the Affidavit was completed, [Prosecutor McCoy] reviewed the Affidavit and believed it was true, accurate, and presented sufficient evidence to meet the probable cause requirement for issuance of an arrest warrant." *Id.* at 2, ¶ 12.

### 1. *Officer Sexton's Affidavit*

Officer Sexton signed a 12-paragraph sworn affidavit[2] in support of the arrest warrant. The first and second paragraphs recited the initial facts surrounding Green's disappearance. The third paragraph was the first in a series of paragraphs summarizing statements from five witnesses. It summarized Langley's original statement, providing that, in 1995,

> witness 1 [Langley] made a statement both verbally and in written form to Law Enforcement. Witness 1 stated he was approached by Brandon Wheeler and Wheeler's roommate in 1994, prior to Jarrod Green's disappearance and offered one thousand ($1,000.00) dollars to get rid of Jarrod Green. After Jarrod Green's disappearance[,] Brandon Wheeler and his roommate came back to witness 1 and stated Jarrod Green had

---

[2]An introductory sentence stating that Officer Sexton was providing the statement under oath preceded the 12 paragraphs.

been done away with. Witness 1 also provided details about Brandon Wheeler and his roommate grabbing Jarrod Green at the Wal-Mart Super Center store parking lot. Original police reports show Jarrod Green's vehicle was found at the Wal-Mart Super Center parking lot.

Aff. to Statement of Facts at 48.

The fourth paragraph mentioned a December 8, 2016 statement taken from witness 2 indicating that the witness had met with Green on the night of his disappearance. Green purportedly asked this witness to return a firearm, which Green needed for protection from Wheeler. The witness gave Green the gun and told him to be careful.

In the fifth paragraph, Officer Sexton described a December 13, 2016 statement from witness 3. Witness 3 related her opinion that Green fled the area to get away from Wheeler. According to witness 3, Green subsequently returned home but disappeared about a week later.

The sixth paragraph referred to a December 14, 2016 statement from witness 4, Green's girlfriend, who related that he begged her to leave with him on the very night that he disappeared. She never saw or heard from him again.

The seventh paragraph described a December 14, 2016 statement from witness 5, a friend of Green, who represented that Green disclosed to him that he had obtained drugs from Wheeler for resale but did not intend to repay Wheeler due to prior experiences with him.

The eighth paragraph mentioned that ten months after Green's disappearance, a close friend of Wheeler's, who had purportedly bragged about having a part in Green's disappearance, also vanished. The ninth paragraph also suggestively mentioned the December 31, 2000 suicide of a near acquaintance of Wheeler's after

-6-

this individual revealed knowledge of two murders to a relative member of the clergy. The statement does not expressly assert any evidence connecting the disappearance and suicide to Wheeler or the disappearance of Green.

The tenth paragraph of the affidavit is perhaps the most crucial to the issue in this case. It reads as follows

> On December 19, 2016, a search warrant was signed by a judge for property of interest in connection with this case in rural White County[,] Arkansas. From December 20, 2016[,] through December 23, 2016[,] the aforementioned uninhabited property was searched due to evidence found confirming information obtained from various sources in this investigation. This information indicated Jarrod Green's body was disposed of at this location. Certified Cadaver dogs were used successfully in locating the aforementioned evidence.

*Id.* at 49.

The affidavit concluded with a request to the court to issue an arrest warrant for Wheeler on the charges of capital murder and abuse of a corpse.

### 2. *Prosecutor McCoy's Role*

In affidavits and depositions, the officers and Prosecutor McCoy provided their accounts of Prosecutor McCoy's role in preparing the arrest-warrant affidavit. With regard to Langley's statement, Officer Sexton averred that he and Officer Kidder "never tried to hide the results of Mr. Langley's interviews with anyone" and that they "provided [their findings] to [their] supervisor as well as Prosecutor McCoy." Ex. 2 to Br. in Supp. of Mot. for Summ. J. at 1, *Wheeler v. City of Searcy*, No. 4:18-cv-00859-SWW (E.D. Ark. 2020), ECF No. 64-2. Officer Sexton testified that the entire case file, which included the officers' interview with Langley, was "[p]rovided to the prosecuting attorney." Pl.'s Ex. A to Resp. to Second Mot. for Summ. J. at 4, *Wheeler v. City of Searcy*, No. 4:18-cv-00859-SWW (E.D. Ark. 2020),

-7-

ECF No. 67-1. Officer Sexton also noted that the case file was "available through discovery." Ex. 2 to Br. in Supp. of Mot. for Summ. J. at 2, ¶ 3. The officers asserted that Prosecutor McCoy advised that they could include Langley's "original 1995 statement . . . in the affidavit as long as [the officers] *provided what [they] learned* in the other interviews with him." *Id*. at 1, ¶ 3 (emphasis added). According to Officer Sexton, "Ms. McCoy knew there was more than one interview on Charles Langley when she approved the affidavit." *Id.* at 2, ¶ 3.

For her part, Prosecutor McCoy recalled telling the officers that she did not think that Langley's recantation was "going to carry a whole lot of weight necessarily, because . . . the form of the question that was shown to be deceptive [during his polygraph test] was very vague." Pl.'s Ex. A to Resp. to Second Mot. for Summ. J. at 26. Prosecutor McCoy did not believe that Langley's response during the polygraph test "necessarily proved that he was telling the truth when he recanted or that he was telling the truth from the beginning." *Id.* at 27. She admitted that Langley "recanted at least on two occasions" and that his recantations were "not included by the officers in th[e] affidavit." *Id.* When questioned about whether she "told [the officers] to omit" Langley's recantations in the affidavit, Prosecutor McCoy responded, "I absolutely did not tell them not to include that. *That would be deceptive* and that's not how I operate. I reviewed this affidavit and *perhaps I should have noticed that it was not in there*, but absolutely did not tell them to put it in there or not to put it in there." *Id.* (emphases added).

### 3. *Dog Search*

With regard to the cadaver dogs' search of the property, the officers have admitted that the dogs never found "human remains." Ex. 1 to Br. in Supp. of Mot. for Summ. J. at 4, ¶ 13; Ex. 2 to Br. in Supp. of Mot. for Summ. J. at 3, ¶ 6. When the affidavit in support of the arrest warrant was signed, the officers knew that the cadaver dogs had merely shown an interest in the area near a deer stand and that no physical evidence of a dead body was discovered during the search. Nevertheless,

-8-

Officer Sexton contended, Prosecutor McCoy "approved the wording in the last paragraph on page 2 of the affidavit because she considered the cadaver dogs' indication evidence as [the officers] did. This was because the dogs were certified and trained to indicate on human remains." Ex. 2 to Br. in Supp. of Mot. for Summ. J. at 3, ¶ 6; *see also* Pl.'s Ex. A to Resp. to Second Mot. for Summ. J. at 5 ("But according to the prosecuting attorney, [the cadaver dogs] indicating that there was human decomposition is considered evidence to get a search warrant."). According to Officer Sexton, Prosecutor McCoy "cited [the officers] to case law which supported this paragraph which was a coordinated effort of [Officer Sexton], Ms. McCoy[,] and Detective Kidder." Ex. 2 to Br. in Supp. of Mot. for Summ. J. at 3, ¶ 6. Officer Kidder likewise maintained that Prosecutor McCoy "advised us [that] because of the intense training and certifications of the cadaver dogs, their alerting to decaying human scent was considered evidence in and of itself and could be used in the affidavit as such. This is the reason this last paragraph is included in the affidavit." Ex. 1 to Br. in Supp. of Mot. for Summ. J. at 4, ¶ 13.

Prosecutor McCoy characterized the arrest-warrant affidavit's statement that "[t]his information indicated Jarrod Green's body was disposed of at this location" as "a strong statement." Pl.'s Ex. A to Resp. to Second Mot. for Summ. J. at 28. When asked which officer made that statement, Prosecutor McCoy replied, "I don't know that any of them told me that." *Id.* She was able only to confirm that Officer Sexton was the affidavit's author.

### 4. *The Arrest-Warrant Request*

Prosecutor McCoy and the officers appeared before White County Circuit Court Judge Robert Edwards to request an arrest warrant. Prosecutor McCoy explained that she accompanied the officers "simply so that [Judge Edwards] would let them in the door, because that's not the normal procedure." Pl.'s Ex. A to Resp. to Second Mot. for Summ. J. at 29. Officers Kidder and Sexton recalled that Judge Edwards asked them "several questions" about the affidavit. Ex. 2 to Br. in Supp. of

-9-

Mot. for Summ. J. at 3, ¶ 7.[3] Prosecutor McCoy averred that Judge Edwards "reviewe[d] the affidavit" and she and the officers "discuss[ed] this matter with Judge Edwards." Ex. 3 to Br. in Supp. of Mot. for Summ. J. at 2, ¶ 14. Thereafter, "he issued a bench warrant charging Brandon Wheeler with Murder and Abuse of a Corpse." *Id.* In her deposition, however, McCoy recalled that Judge Edwards relied solely on the affidavit's contents to make a probable-cause determination. According to McCoy, the officers presented the affidavit, and she offered no comments. Judge Edwards read the affidavit and signed it.

On April 6, 2017, Judge Edwards issued a warrant for Wheeler's arrest on the charges of capital murder and abuse of a corpse. On May 10, 2017, Prosecutor McCoy issued an information charging Wheeler with capital murder and abuse of a corpse. Wheeler was arrested and detained.

On June 5, 2017, Wheeler was released on bail. On November 9, 2017, Prosecutor McCoy moved to *nolle pros* the charges against Wheeler "for the reason additional evidence is expected to be recovered and DNA testing would not be completed within the time frames set by the Court." Aff. to Statement of Facts at 53.

### C. *This Action*

Wheeler brought suit under 42 U.S.C. § 1983 against Officers Kidder, Sexton, and Darnell in their individual and official capacities.[4] Wheeler alleged that the officers committed the following violations of his constitutional rights: (1) unreasonable seizure, in violation of the Fourth and Fourteenth Amendments; (2) deprivation of liberty and property without due process, in violation of the

---

[3]The content of the questions and answers is not in the record.

[4]Wheeler also sued Officer Perry, former Searcy Police Department Police Chief Eric Webb, and the City of Searcy, Arkansas, but the district court dismissed the claims against them with prejudice.

-10-

Fourteenth Amendment;[5] (3) deprivation of the right to a speedy trial, in violation of the Sixth Amendment; and (4) cruel and unusual punishment and excessive bail, in violation of the Eighth Amendment.[6]

### 1. *First Motion for Summary Judgment*

The officers moved for summary judgment, arguing that probable cause supported Wheeler's arrest and that they were therefore entitled to qualified immunity.

Wheeler argued in response that Officer Sexton's sworn "affidavit contain[ed] *two* glaring omissions: (1) that Langley . . . recanted his [original] statement and (2) that the December 2017 cadaver-dog searches uncovered no evidence of human remains or evidence connected to Green." *Wheeler*, 2020 WL 2758898, at *6 (footnote omitted).

Upon review, the court found it was "undisputed that [Officers] Sexton, Kidder, and Darnell knew that, contrary to the warrant affidavit, Langley had renounced his initial statement and that Green's body was never recovered. . . . [and] that the officers appeared before Judge Edwards and sought a warrant for Wheeler's arrest based on Sexton's affidavit." *Id.* According to the court, the warrant affidavit's description of "Langley's initial statement was arguably crucial to a finding of probable cause." *Id.* The warrant affidavit treated Langley's subsequent recantations as nonexistent.

---

[5]The district court concluded that Wheeler's claim for relief under § 1983 based on a pretrial deprivation of liberty was governed by the Fourth Amendment's prohibition of unreasonable seizures as opposed to due process.

[6]Wheeler also alleged intentional infliction of emotional distress under Arkansas law against the officers. The district court denied summary judgment to the officers on that claim based on its conclusion that "the veracity of the warrant affidavit at issue is questionable." *Wheeler*, 2020 WL 2758898, at *8.

With respect to the affidavit's statements about the cadaver dogs, the court found this "affidavit falsely indicated that cadaver dogs had located Green's remains." *Id.* While the cadaver dogs showed interest in the area around the deer stand, they never recovered physical evidence of a dead body. In fact, Green's remains have never been found.

The court removed the paragraph from the affidavit describing Langley's initial statement and the paragraph about the recovery of Green's remains. The court determined that, "[a]fter editing out the incomplete and false portions of the warrant affidavit, the remaining information was insufficient to establish that Green was dead and that his death was caused by the criminal act of another person." *Id.* at *7. The district court determined that the officers were not entitled to qualified immunity on the individual-capacity claims for unreasonable seizure.

2. *Second Motion for Summary Judgment*

Thus, after the district court's first summary-judgment order, the claims remaining were Wheeler's individual-capacity claims against Officers Kidder, Sexton, and Darnell, alleging that they violated his Fourth Amendment rights by knowingly or recklessly omitting material facts from the warrant affidavit. The officers filed a second motion for summary judgment, relying on *Messerschmidt*. They argued that under *Messerschmidt*, McCoy's approval of the warrant affidavit entitled them to qualified immunity. In *Messerschmidt*, the plaintiffs argued that officers' search of their home violated the Fourth Amendment because the search warrant was overbroad. 565 U.S. at 544. The issue was whether the officers were entitled to qualified immunity even if the search warrant was not properly issued. *Id.* at 546. The Supreme Court set forth several reasons why a reasonable officer would have believed that probable cause supported the search warrant, including "the fact that the officers sought and obtained approval of the warrant application from a superior and a deputy district attorney before submitting it to the Magistrate." *Id.* at 553.

-12-

The district court distinguished *Messerschmidt* from the present case, pointing out that it "did not involve a charge that officers knowingly or recklessly included false or misleading information in an arrest warrant application." *Wheeler*, 2020 WL 6141041, at *4. The district court also relied on our precedent that following a prosecuting attorney's legal advice "does not automatically cloak one with qualified immunity, but rather, is used to show the reasonableness of the action taken." *Id.* at *5 (quoting *E-Z Mart Stores, Inc. v. Kirksey*, 885 F.2d 476, 478 (8th Cir. 1989)).

The district court concluded that "no question [existed] that submitting a false and misleading affidavit in support of an arrest warrant violates clearly established law, and based on the undisputed evidence in this case, the information omitted from the affidavit made a difference and was material to the question of probable cause." *Id.* The court determined that "no well-trained officer in defendants' position could reasonably but mistakenly conclude that it was lawful to omit information about Langley's recantations and the lack of physical evidence." *Id.* As a result, the court denied the officers' second motion for summary judgment.

## II. *Discussion*

The officers appeal the district court's opinion and order denying their second motion for summary judgment. *See* Notice of Appeal at 1, *Wheeler v. City of Searcy*, No. 4:18-cv-00859-SWW (E.D. Ark. 2020), ECF No. 74.

We review de novo a district court's denial of summary judgment, and we view the evidence in the light most favorable to the non-movant. *Banks v. Hawkins*, 999 F.3d 521, 524 (8th Cir. 2021). "On interlocutory appeal from a denial of qualified immunity, though, 'we are constrained by the version of the facts that the district court assumed or likely assumed in reaching its decision.'" *Id.* (quoting *Thompson v. Murray*, 800 F.3d 979, 983 (8th Cir. 2015)). Unless the record blatantly contradicts the district court's version of the facts, "'our jurisdiction is limited to resolving abstract questions of law related to the qualified-immunity determination'—that is,

-13-

the purely legal questions of 'whether a dispute identified by the district court is material' and 'whether the allegedly infringed federal right was clearly established.'" *Id.* (quoting *Thompson*, 800 F.3d at 982–83). "Thus, a defendant challenging the denial of a motion for summary judgment on the basis of qualified immunity 'must be prepared to concede the best view of the facts to the plaintiff and discuss only the legal issues raised by the appeal.'" *K.W.P. v. Kan. City Pub. Schs.*, 931 F.3d 813, 821 (8th Cir. 2019) (quoting *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007)).

To determine whether an official is entitled to qualified immunity, we conduct a two-part test: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Masters v. City of Independence*, 998 F.3d 827, 835 (8th Cir. 2021) (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009)).

In its first summary-judgment order, the district court determined that the officers violated Wheeler's Fourth Amendment rights by submitting a false and misleading affidavit in support of the arrest warrant. *See Wheeler*, 2020 WL 2758898, at *5–7; *see also Wheeler*, 2020 WL 6141041, at *3–4.

The officers, however, did not appeal the first summary-judgment order. They have appealed only the district court's order denying their *second* motion for summary judgment. We therefore address a narrow issue: whether the officers "are entitled to qualified immunity because they reasonably relied on the advice of counsel." Second Mot. for Summ. J. at 1, ¶ 3, *Wheeler v. City of Searcy*, No. 4:18-cv-00859-SWW (E.D. Ark. 2020), ECF No. 62.[7] The officers argue that

---

[7]"Because the only order of the district court designated in [the officers'] notice of appeal was [the opinion and order denying their *second motion* for summary judgement], we conclude that the scope of this appeal is limited to review of that order . . . ." *Midyett v. Wilkie*, 818 F. App'x 585, 585 (8th Cir. 2020) (unpublished per

-14-

*Messerschmidt*'s holding "is squarely on point with this case." Appellants' Br. at 6. According to the officers, the same facts that afforded the officers qualified immunity in *Messerschmidt* are present in this case: the officers "did not hide anything from [the prosecuting attorney]. They worked with her in a lengthy process to develop a probable cause affidavit that they submitted to the judge." *Id.* Essentially, the officers are arguing that *Messerschmidt* clearly establishes that they *did not* violate Wheeler's constitutional rights. We disagree and distinguish this case from *Messerschmidt* on its facts.

"Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or . . . in 'objective good faith.'" *Messerschmidt*, 565 U.S. at 546 (citing *United States v. Leon*, 468 U.S. 897, 922–23 (1984)). But "the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness." *Id.* at 547. The Supreme Court "ha[s] recognized an exception allowing suit when 'it is obvious that no reasonably competent officer would have concluded that a warrant should issue.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "The Court in *Leon* identified four situations that *per se* fail to satisfy the [*Leon*] good[-]faith exception. In these situations, 'the officer will have no reasonable grounds for believing that the warrant was properly issued.'" *United States v. Underwood*, 725 F.3d 1076, 1085 (9th Cir. 2013) (quoting *Leon*, 468 U.S. at 922–23).

---

curiam) (citing Fed. R. App. P. 3(c)(1) (providing that the notice of appeal must designate the judgment, order, or part thereof being appealed)). In the officers' second motion for summary judgment, the legal issue was specifically limited to whether "McCoy's approval of the warrant affidavit entitles them to qualified immunity." *Wheeler*, 2020 WL 6141041, at *4; *see also* Second Mot. for Summ. J. at 1, ¶ 3 ("Defendants are entitled to qualified immunity because they reasonably relied on advice of counsel.").

One of those situations occurs when "the affiant recklessly or knowingly placed false information in the affidavit that misled the issuing judge." *Id.* (citing *Leon*, 468 U.S. at 922–23). "[T]he deference accorded to a magistrate's finding of probable cause does not preclude inquiry into the knowing or reckless falsity of the affidavit on which that determination was based." *Leon*, 468 U.S. at 914. "Indeed, 'it would be an unthinkable imposition upon [the magistrate's] authority if a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, were to stand beyond impeachment.'" *Id.* at 914 n.12 (alteration in original) (quoting *Franks v. Delaware*, 438 U.S. 154, 165 (1978)).

Therefore, "[a] fourth amendment violation occur[s] if [an officer's] probable cause statement contained a '"deliberate falsehood"' or he acted with '"reckless disregard for the truth"' when he prepared it." *Murray v. Lene*, 595 F.3d 868, 872 (8th Cir. 2010) (quoting *Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir. 1996)). "Omissions . . . can vitiate a warrant if [the aggrieved party] proves" two things. *United States v. Ketzeback*, 358 F.3d 987, 990 (8th Cir. 2004). First, the aggrieved party must prove "that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading." *Id.* (quoting *United States v. Allen*, 297 F.3d 790, 795 (8th Cir. 2002)). Second, the aggrieved party must prove "that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *Id.* (quoting *Allen*, 297 F.3d at 795). "We have held that 'recklessness may be inferred from the omission of information from an affidavit . . . only when the material omitted would have been clearly critical to the finding of probable cause.'" *Murray*, 595 F.3d at 872 (alteration in original) (quoting *United States v. Ozar*, 50 F.3d 1440, 1445 (8th Cir. 1995)).

*Messerschmidt* did not involve an allegation that the officers who applied for a search warrant *intentionally or recklessly provided false information* to the neutral magistrate. *See* 565 U.S. at 547 n.2 ("There is no contention before us that the affidavit was misleading in omitting any of the facts . . . ."). Instead, at issue was the

-16-

validity of a potentially overbroad warrant. *See Messerschmidt*, 556 U.S. at 544. "The warrant authorized a search for all guns and gang-related material, in connection with the investigation of a known gang member for shooting at his ex-girlfriend with a pistol-gripped sawed-off shotgun, because she had 'call[ed] the cops' on him." 565 U.S. at 539 (alteration in original). The plaintiffs brought suit under § 1983 against the officers, "alleging that the search violated their Fourth Amendment rights because there was not sufficient probable cause to believe the items sought were evidence of a crime." *Id.* More specifically, the plaintiffs asserted that "there was no basis to search for all guns simply because the suspect owned and had used a sawed-off shotgun, and no reason to search for gang material because the shooting at the ex-girlfriend for 'call[ing] the cops' was solely a domestic dispute." *Id.* (alteration in original). A neutral magistrate had issued the challenged warrant. *Id.*

Rather than address probable cause, the Supreme Court determined that even if the officers were mistaken in their "judgment that the scope of the warrant was supported by probable cause," the officers were not "plainly incompetent." *Id.* at 553 (quoting *Malley*, 475 U.S. at 341). The Supreme Court then set forth facts "support[ing] . . . the conclusion that an officer could reasonably have believed that the scope of the warrant was supported by probable cause." *Id.* The Court cited "the fact that the officers sought and obtained approval of the warrant application from a superior and a deputy district attorney before submitting it to the Magistrate." *Id.* Furthermore, the Court noted that before the officer sought to have the magistrate issue the warrant, the officer "conducted an extensive investigation into [the perpetrator's] background and the facts of the crime" and then "prepared a detailed warrant application that *truthfully* laid out the pertinent facts." *Id.* (emphasis added). The omitted facts concerning the perpetrator's "arrest and conviction records . . . would only have strengthened the warrant." *Id.* at 554. The officer "then submitted the warrant application for review by . . . another superior officer . . . and a deputy district attorney, all of whom approved the application without any apparent misgivings." *Id.* As a result, the Court could not say "that 'no officer of reasonable

-17-

competence would have requested the warrant.'" *Id.* (quoting *Malley*, 475 U.S. at 346 n.9).

According to the Court, "a contrary conclusion would mean not only that [the officers] were 'plainly incompetent,' but that their supervisor, the deputy district attorney, and the Magistrate were as well." *Id.* (quoting *Malley*, 475 U.S. at 341). Their review of the warrant application was *relevant* in determining "whether [the officer's] conduct in [that] case was in fact objectively reasonable." *Id.* at 555 (alterations in original) (quoting *Malley*, 475 U.S. at 345 n.8). However, "because the officers' superior and the deputy district attorney are part of the prosecution team," the Court noted that "their review also cannot be regarded as dispositive." *Id.* at 554. Instead, the Court explained, "[t]he fact that the officers secured these approvals is certainly pertinent in assessing whether they could have held a reasonable belief that the warrant was supported by probable cause." *Id.* at 555.

Because *Messerschmidt* did not involve a claim that officers obtained a warrant based on a misleading affidavit, its discussion of the officers' reliance on the prosecuting attorney's advice is inapplicable to the present case.[8]  Additionally, even

---

[8]For the same reasons that the officers' reliance on *Messerschmidt* is misplaced, so, too, is their reliance on *Nord*. As the district court explained:

> Defendants also cite *Nord v. Walsh Cty.*, 757 F.3d 734 (8th Cir. 2014) for the proposition that McCoy's approval of the warrant affidavit makes a difference. In *Nord*, deputy sheriff Ron Nord ran for sheriff, challenging the incumbent. The incumbent sheriff won the race and then terminated Nord for comments he had made during the campaign. Nord filed suit, asserting a First Amendment retaliation claim, and the sheriff moved for summary judgment asserting qualified immunity, which the district court denied. The Eighth Circuit reversed, finding that the sheriff could have reasonably believed that Nord's statements were unprotected based on several factors, including that a county attorney advised that the sheriff was within her authority to terminate Nord. Like

-18-

if *Messerschmidt* were applicable, Prosecutor McCoy denied advising the officers on whether to omit the recantation and did not agree that she advised them on the language about the dog search.

As a result, we hold that the district court did not err in denying the officers' second motion for summary judgment and rejecting their argument that they are entitled to qualified immunity because they reasonably relied on Prosecutor McCoy's advice in crafting a misleading arrest-warrant affidavit.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

COLLOTON, Circuit Judge, concurring.

I concur in the opinion of the court with the following understandings.

First, because the officers did not appeal the district court's order denying their first motion for summary judgment, the court expresses no view on the merits of that order. In particular, the decision does not address whether the district court properly analyzed the plaintiff's claims regarding Detective Sexton's affidavit by "removing" paragraphs from which the officer allegedly omitted information, rather than by supplementing the affidavit with the omitted information. *See United States v. Ketzeback*, 358 F.3d 987, 990 (8th Cir. 2004). Nor does the decision address whether the disputed omissions would have been "clearly critical" to the issuing judge's finding of probable cause, *Murray v. Lene*, 595 F.3d 868, 872 (8th Cir. 2010), or whether the officers would be entitled to qualified immunity (independent of any

---

*Messerschmidt*, *Nord* did not involve a claim that officers obtained a warrant based on a misleading affidavit.

*Wheeler*, 2020 WL 6141041, at *4 n.16.

-19-

advice of counsel), even if a corrected affidavit would have been insufficient to establish probable cause to arrest. *See Bagby v. Brondhover*, 98 F.3d 1096, 1099 (8th Cir. 1996). Those questions are not presented by this appeal, because the officers challenge only the order denying the second motion for summary judgment.

Second, while *Messerschmidt v. Millender*, 565 U.S. 535 (2012), did not involve advice from a prosecutor to officers about information omitted from an affidavit in support of an application for a warrant, the decision in this case does not say that such advice would never be relevant to a qualified-immunity inquiry. If, for example, officers consult in good faith with a prosecuting attorney about whether particular information gathered during an investigation should be included in an affidavit, and the attorney advises that the information is immaterial and may be omitted, that fact may be relevant to whether the officers were "plainly incompetent" in declining to include the information, *see id.* at 554—even if a court later concludes that the omitted information was material to a determination of probable cause.

This case involves two asserted omissions: one concerning a partial recantation by witness Langley and another about the nature of evidence found at the scene of a search by cadaver dogs. On the latter, the disputed affidavit refers to "evidence" found confirming "information" from "sources" that the victim's body was disposed of at the location of the dog search. The officers believed that a positive indication by cadaver dogs to the scent of decomposing human remains was "evidence" that the victim's body had been located there, even though no remains were found. But the affidavit did not explain the nature of the "evidence" or report the absence of human remains. The district court thought the affidavit "falsely indicated" that the dogs had located human remains.

The officers argue that they relied on advice from a prosecuting attorney in crafting the affidavit, but the evidence is not undisputed that the attorney counseled the officers that the challenged omissions were appropriate. The prosecutor testified

-20-

that she did not advise the officers to omit information about witness Langley's recantation.  R. Doc. 67-1, at 27; *see* R. Doc. 64-3, at 2.  On the matter of the search by cadaver dogs, too, her testimony does not accord entirely with the position of the officers.  One officer averred that the prosecuting attorney "approved the wording" of the affidavit on this subject, and another said that she "contributed to the paragraph."  But the prosecutor did not confirm those statements, and she testified that she did not know that any officer told her about information obtained from sources indicating that the victim's body was disposed of at the location of the search. R. Doc. 67-1, at 28.  Without that knowledge, she presumably was not in a position to give informed advice about the wording of the disputed paragraph.

In this posture, we must take the evidence in the light most favorable to the plaintiff, even if a jury later could reach a different conclusion.  On this record, given the prosecutor's testimony, a rational jury could find that the officers did not rely on her informed legal advice in making the challenged omissions or statements in the affidavit.  Accordingly, the district court properly denied the second motion for summary judgment, which was based entirely on *Messerschmidt* and asserted reliance on counsel.

———————————————

-21-

# United States Court of Appeals
## *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

September 29, 2021

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

     RE:  20-3292  Brandon Wheeler v. Mark Kidder, et al

Dear Sirs:

     A published opinion was filed today in the above case.

     Counsel who presented argument and appeared on the brief on behalf of the appellant was Colin C. Heaton, of Hot Springs, AR. The following attorney also appeared on the appellant brief;  Clyde Burt Newell, of Hot Springs, AR.

     Counsel who presented argument and appeared on the brief on behalf of the appellee was James Michael Petty, of Searcy, AR. The following attorney also appeared on the appellee brief;  Denny Paul Petty, of Searcy, AR.

     The judge who heard the case in the district court was Honorable Susan Webber Wright. The judgment of the district court was entered on October 19, 2020.

     If you have any questions concerning this case, please call this office.

                     Michael E. Gans
                     Clerk of Court

MVP

Enclosure(s)

cc:  MO Lawyers Weekly

     District Court/Agency Case Number(s):   4:18-cv-00859-SWW

## John Hibbs

| | |
|---|---|
| **From:** | ca08ml_cmecf_Notify@ca8.uscourts.gov |
| **Sent:** | Wednesday, September 29, 2021 8:37 AM |
| **Subject:** | 20-3292 Brandon Wheeler v. Mark Kidder, et al "Signed Opinion Filed" (4:18-cv-00859-SWW) |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.**

**Eighth Circuit Court of Appeals**

**Notice of Docket Activity**

The following transaction was filed on 09/29/2021

| | |
|---|---|
| **Case Name:** | Brandon Wheeler v. Mark Kidder, et al |
| **Case Number:** | 20-3292 |
| **Document(s):** | Document(s) |

**Docket Text:**
OPINION FILED - THE COURT: Lavenski R. Smith, Steven M. Colloton and Ralph R. Erickson
AUTHORING JUDGE:Lavenski R. Smith (PUBLISHED),
CONCUR BY: Steven M. Colloton [5081661] [20-3292] (Megan Polley)

**Notice will be electronically mailed to:**

Ms. Tammy H. Downs, Clerk of Court: ared_appeals@ared.uscourts.gov
Mr. Colin C. Heaton: colin@heatonfirm.com, kayla@heatonfirm.com, colin@hotspringslaw.net
Mr. Clyde Burt Newell: burt@hotspringslaw.net, kayla@hotspringslaw.net, aperma@hotspringslaw.net,
michelle@hotspringslaw.net
Mr. Denny Paul Petty: pettylawfirm@hotmail.com
Mr. James Michael Petty: pettylawfirm@hotmail.com
MO Lawyers Weekly: michaelh@mesjassociates.com, slauck@molawyersmedia.com
West Publishing: us.coa.8@content.thomsonreuters.com

The following document(s) are associated with this transaction:
**Document Description:** Counsel Opinion Letter
**Original Filename:** /opt/ACECF/live/forms/MeganPolley_203292_5081661_CounselOpinionLetters_285.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=09/29/2021] [FileNumber=5081661-1]
[52d806a48f888c96e6a839858748cd645baedbbd5f6de3d540124c60fedbf107a9bf9f77cc673bf6a68454799ee95e648bf5
9c74c88563ee4a7633a94074afcd]]
**Recipients:**

- Ms. Tammy H. Downs, Clerk of Court
- Mr. Colin C. Heaton
- Mr. Clyde Burt Newell
- Mr. Denny Paul Petty
- Mr. James Michael Petty

**Document Description:** Published Signed Opinion
**Original Filename:** 203292P.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=09/29/2021] [FileNumber=5081661-0]
[8917650a9c1b6a9af0b600f3d32885715e404b9bd5dceccad283dc2c32af8d6a092004dda5e9fc7bc628f0b969ece6d88d5
8ae06f7ee11e50de6a36c1e5c95da]]

**Document Description:** Letter To Publishing
**Original Filename:** /opt/ACECF/live/forms/MeganPolley_203292_5081661_LettersToPublishing_284.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=09/29/2021] [FileNumber=5081661-2]
[a39e078f13c52f7914baadae010a673e3ca5e8c1836ef4ad1d9a0dd484bc180cf4db2ae3e04f16a35fd1067fe780adc50c21
42f0e0de04fb8a67f889ca29aaa5]]
**Recipients:**

- MO Lawyers Weekly
- West Publishing

The following information is for the use of court personnel:

**DOCKET ENTRY ID:** 5081661
**RELIEF(S) DOCKETED:**
  for publication
  concurrence
**DOCKET PART(S) ADDED:** 6860323, 6860324, 6860325, 6860326